PD-1429-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/1/2015 5:02:37 PM
Accepted 12/2/2015 9:30:10 AM
ABEL ACOSTA

ORAL ARGUMENT REQUESTED

FILED IN
COURT OF CRIMINAL APPEALS

December 7, 2015

ABEL ACOSTA, CLERK

NO. PD-1429-14

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS
SITTING AT AUSTIN, TEXAS

---

KENNETH WALKER,
Petitioner,

VS.

THE STATE OF TEXAS
Respondent

---

On Petition for Discretionary Review
To the Court of Appeals Twelfth
Supreme Judicial District Cause
No. 12-12-00378-CR

BRIEF ON THE MERITS

James W. Huggler
State Bar No. 00795437
100 E. Ferguson, Suite 805
Tyler, Texas 75702
Telephone:  903-593-2400
Facsimile:  903-593-3830
jhugglerlaw@sbcglobal.net

ATTORNEY FOR PETITIONER

# IDENTITY OF THE PARTIES AND COUNSEL

APPELLANT:
   Kenneth Walker

APPELLANT'S TRIAL COUNSEL:
   Scott Ellis
   419 West Houston Street
   Tyler, Texas 75702
   903-596-7600
   903-596-7605 (Fax)

   Cameron Castleberry
   422 South Spring Avenue
   Tyler, Texas 75702
   903-330-3909

APPELLANT'S APPELLATE COUNSEL
   James Huggler
   100 E. Ferguson, Suite 805
   Tyler, Texas 75702
   903-593-2400
   903-593-3830 (fax)

APPELLEE
   The State of Texas

APPELLEE'S TRIAL COUNSEL
   Jason Parrish
   Jeff Wood
   Kenneth Biggs
   Smith County District Attorney's Office
   100 N. Broadway, 4th Floor
   Tyler, Texas 75702
   903-590-1720

APPELLEE'S APPELLATE COUNSEL

Michael West
Smith County District Attorney's Office
100 N. Broadway, 4th Floor
Tyler, Texas 75702
903-590-1720

# TABLE OF CONTENTS

DESCRIPTION                                                                          PAGE

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUE ONE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    The Court of Appeals erred in finding legally sufficient
    evidence in this case, and allows this Court to reexamine the
    issue of factually sufficient evidence from <u>Brooks v. State</u>,
    323 S.W.3d 893 (Tex. Crim. App. 2010)

ISSUE TWO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    The Court of Appeals erred in allowing a speculative verdict to
    stand in contrast to this Court's instructions.

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ISSUE ONE, RESTATED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ISSUE TWO, RESTATED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A. <u>Clewis</u> and <u>Brooks</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    B. Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    C. Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    D. Speculative Verdict Allowed to Stand. . . . . . . . . . . . . . . . 20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . 25

# INDEX OF AUTHORITIES

## STATUTES
TEX. PENAL CODE ANN. §22.04(a)(1) (West 2011). . . . . . . . . . . . . . . . . . . . 2


## CASES
Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App. 2010).. . . . . . 3, 6, 7, 17

Clayton v. State, 235 S.W. 3d 772 (Tex. Crim. App. 2007). . . . . . . . . . 22

Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1997). . . . . . . . . . . 7, 8

Garcia v. State, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). . . . . . . . 22

Hooper v. State, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). . . . . . . . . . 21

Jackson v. Virginia, 443 U.S. 307, 319 (1979). . . . . . . . . . . . 7, 18, 19, 20

Meraz v. State, 785 S.W.2d 146, 154 (Tex. Crim. App. 1990). . . . . . . . . 9

Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Texas 1986). . . . . . . . . . 9

Ex parte Schuessler, 846 S.W.2d 850 (Tex. Crim. App. 1993). . . . . . . . 8

Tibbs v. Florida, 457 U.S. 31 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Walker v. State, 12-12-00379-CR, 2014 Tex. App. LEXIS 10466 (Tex. App. – Tyler). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Walker v. State, No. 12-12-00378-CR, 2014 Tex. App. LEXIS 10443 (Tex. App. – Tyler) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim


## RULES
TEX. R. APP. P. ANN. 9.4 (West 2015). . . . . . . . . . . . . . . . . . . . . . . . . . 25

| KENNETH WALKER, | § | IN THE COURT OF |
| PETITIONER | § | |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| THE STATE OF TEXAS, | § | |
| APPELLEE | § | AUSTIN, TEXAS |

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Kenneth Walker, Petitioner and Defendant in the trial court, respectfully submits this Brief on the Merits complaining of the ruling and opinion by the Court of Appeals for the Twelfth Supreme Judicial District, and would show the Court as follows:

## STATEMENT REGARDING ORAL ARGUMENT

This Court has granted oral argument so that all matters may be clarified and any questions presented by the briefs of the parties may be addressed in a proper manner. Counsel is prepared to appear at the Court's pleasure.

1

## STATEMENT OF THE CASE

Kenneth Walker was indicted for the first degree offense of injury to a child in Smith County Texas on May 10, 2012. CR 1-2[1]; TEX PENAL CODE ANN. §22.04(a)(1) (West 2011). The case was consolidated for trial with his wife, Shelley Walker. IV RR 21-25[2]. Following the presentation of evidence, the Walkers were convicted. CR 266. The jury assessed punishment at twenty-five years confinement. CR 281, 285-86. Notice of appeal was timely filed. CR 298. The Court of Appeals affirmed the trial court's judgment in an unpublished opinion. This Court granted discretionary review.

---

[1] References to the Clerk's Record are noted as "CR" with an arabic numeral following "CR" specifying the correct page.

[2] References to the Reporter's Record are noted as "RR" with a roman numeral preceding "RR" indicating the volume, and an arabic numeral following specifying the applicable page in the record.

## ISSUES FOR REVIEW

ISSUE ONE:     The Court of Appeals erred in finding legally
sufficient evidence in this case, and allows this Court to reexamine
the issue of factually sufficient evidence from <u>Brooks v. State</u>, 323
S.W.3d 893 (Tex. Crim. App. 2010).

ISSUE TWO: The Court of Appeals erred in allowing a speculative
verdict to stand in contrast to this Court's instructions.

## STATEMENT OF FACTS

Shelley and Kenneth Walker adopted their three grandchildren
after they were removed by CPS due to abuse and neglect.  V RR 54,
VIII RR 70-71.  B.W., one of the adopted grandchildren was alleged as
the victim in this indictment.[3]  B.W. had scald burns to both feet, most
likely caused by water in the family's bathtub.  VI RR 104-5.

The State's theory was that B.W. was forcibly immersed by both
of the Walkers and held in the water.  IX RR 136.  The Walkers theory
was that B.W. caused the injuries herself accidentally.

B.W. had been burned at approximately 8:35 to 8:38 that
morning.  VII RR 65.  Shelley Walker began calling Amanda Walker at

---

[3]  References to juveniles are made by initials.

3

8:38 that morning. VII RR 109. At that point, B.W.'s feet were red and Amanda instructed Shelley Walker to put them in cold water. VII RR 111. Then B.W.'s skin began to peel and Amanda instructed the Walkers to call EMS. VII RR 112. At 8:54 Kenneth Walker called 911 and was connected with the Tyler Police Department. VII RR 19, 25. EMS was dispatched at 8:56 a.m. VII RR 139.

Upon initial inspection by police, the water heater was set one level below the maximum temperature. VII RR 120. The thermostat was then turned on and allowed to heat for thirty minutes. VII RR 121. At that thermostat setting the water temperature was checked in the kitchen, the master bathroom sink and the bathtub and each resulted in a maximum temperature of 120-122 degrees Fahrenheit. VII RR 122-23. The officers then increased the setting to the maximum and were able to achieve a maximum temperature of 131 degrees in the master bathroom from the tap. VII RR 127. In the tub, with four to six inches of water the maximum temperature was 128 to 129 degrees. VII RR 127.

A ten to fifteen second exposure to water at 130 degrees would be sufficient to cause these types of injuries. VI RR 111. However, if the

4

water was 126-129 degrees, a second degree burn could take two minutes. VIII RR 24. Initially, the treating physician believed that the burns were severe and would require grafting. VIII RR 11. The burns were able to heal without the need for skin grafts or reconstruction. VI RR 110.

Water heated to this temperature would not produce burns instantly, and if water that temperature had been splashed onto the skin, it would not have left any splash marks. VI RR 121, 123. The tub itself even when completely turned off allowed a pencil size stream of water to enter the tub. VII RR 64-65, 79.

B.W. and N.W. both had their underclothes on the floor in the bathroom. VI RR 145, XVI RR State Ex. 40. The height of the bathtub meant that B.W. could not climb in or out of the tub one foot at a time, like an adult. VI RR 144, VII RR 63-64. She would have to sit on the edge of the tub to get in or out. B.W. also had scrapes on her thighs consistent with sliding over a metal railing to get in or out of the bathtub. VI RR 134-35. The bathtub had sliding glass doors with a metal frame surrounding the doors including on the tub itself. VII RR 49, XVI RR State Ex. 40. N.W., had been diagnosed as autistic and

described as an 'instigator.' VI RR 35, VIII RR 100. He has previously pulled his sister B.W. into the bathroom and locked the door. VI RR 363.

## SUMMARY OF THE ARGUMENT

This case, and the companion case Shelley Walker v. State, PD-1430-14, illustrate the necessity for a factual sufficiency of the evidence review. Following the opinion in Brooks, the Court of Appeals analyzed these cases using only a legal sufficiency analysis. The Walkers seek a reversal of the Brooks plurality opinion and find the evidence was factually insufficient to support the conviction. In this case, the analysis at the Court of Appeals, following Brooks, allowed the judgments to stand despite investigating officers changing the setting of the water heater and a verdict which can only be characterized as supported by inference upon inference based on speculation which is in contrast with this Court's previous rulings.

## ARGUMENT AND AUTHORITIES

Issue One, Restated: The Court of Appeals erred in finding legally sufficient evidence in this case, and allows this Court to reexamine the issue of factually sufficient evidence from <u>Brooks v. State</u>, 323 S.W.3d 893 (Tex. Crim. App. 2010).

Issue Two, Restated: The Court of Appeals erred in allowing a speculative verdict to stand in contrast to this Court's instructions.

### A. <u>Clewis</u> and <u>Brooks</u>

<u>Jackson</u> established the standard of review to determine if evidence was legally sufficient to support the verdict. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The critical inquiry was, in viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson</u>, 443 U.S at 319.

In 1997, this Court held that because of Texas constitution and statutory provisions, appellate courts were able to review fact questions. <u>Clewis v. State</u>, 922 S.W.2d 126, 128 (Tex. Crim. App. 1997). The idea that a factual sufficiency analysis was proper using the <u>Jackson</u> standard was not sufficient for a review of factual claims.

<u>Clewis</u>, 922 S.W.2d at 129. The proper standard was to view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. <u>Clewis</u>, 922, S.W.2d at 129.

There are key differences between a <u>Jackson</u> and <u>Clewis</u> analysis. If the evidence is legally insufficient, the case should not have been submitted to a jury and an acquittal must be ordered. <u>Tibbs v. Florida</u>, 457 U.S. 31, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982). This substitutes the finding of the appellate court for the jury decision. <u>Clewis</u>, 922 S.W.2d at 133. In contrast, a factual sufficiency review is a question of fact. <u>Ex parte Schuessler</u>, 846 S.W.2d 850, 852, n. 5 (Tex. Crim. App. 1993). A reversal based on factual sufficiency will result in the judgement being vacated and the case remanded for a new trial. <u>Clewis</u>, 922 S.W.2d at 133-34.

The <u>Jackson</u> standard does not incorporate a factual sufficiency review, rather it is the minimum standard for comporting with federal due process. <u>Clewis</u> 922 S.W.2d at 134.

The Court has discussed sufficient safeguards so that an appellate

8

decision does not usurp the jury function.  <u>Meraz</u>, 785 S.W.2d 146, 154 (Tex. Crim. App. 1990).  The Court recommended that the evidence should be detailed as to the issue in question and clearly state why the jury's finding is so factually insufficient as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias.  <u>Pool v. Ford Motor Co.</u>, 715 S.W.2d 629, 635 (Tex. 1986).  The appellate court should also state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.  <u>Id</u>.

In 2010, the Court eliminated the <u>Clewis</u> factual sufficiency review.  <u>Brooks v. State</u>, 323 S.W.3d 893 (Tex. Crim. App. 2010).  The Court found that the analysis between <u>Clewis</u> and <u>Jackson</u> was barely distinguishable and that the legal sufficiency standard was the only test to apply to determine whether the evidence was sufficient to support each element beyond a reasonable doubt.  <u>Brooks</u>, 323 S.W.2d at 895.  While <u>Clewis</u> had recognized there was an inherent difference between the review for legally sufficient evidence and factually sufficient evidence, the Court in <u>Brooks</u> found that there was no meaningful distinction.

## B. Relevant Facts

The Walkers had adopted three siblings through CPS. <u>Walker</u> at *6. Evidence established that two of the children had overflowed the bathtub and water flowed out from under the bathroom door. <u>Walker</u> at *9. Two of the children had locked themselves in the bathroom and overflowed the sink, toilet and tub. <u>Id.</u>. The Walkers installed locks on the bathroom doors after these incidents. <u>Id</u>. These actions occurred even though sliding glass doors with railings were installed on the tub. <u>Walker</u> at *10.

During the investigation, the water heater was set one level below the maximum temperature. VII RR 120. The thermostat was then turned on and allowed to heat for thirty minutes. VII RR 121. The officers then increased the setting to the maximum and were able to achieve a maximum temperature of 131 degrees in the master bathroom from the tap. VII RR 127. In the tub, with four to six inches of water the maximum temperature was 128 to 129 degrees. VII RR 127. Water heated 126-129 degrees would not produce burns instantly, and if water that temperature had been splashed onto the skin, it would not have left any splash marks. VI RR 121, 123.

A ten to fifteen second exposure to water at 130 degrees would be sufficient to cause these types of injuries. VI RR 111. However, if the water was 126-129 degrees, a second degree burn could take two minutes. VIII RR 24. So, the time required for these burns was up to two minutes, during which time the Walkers were to have held the child suspended in the water.

B.W. and N.W. both had their underclothes on the floor in the bathroom. VI RR 145, XVI RR State Ex. 40. The height of the bathtub meant that B.W. could not climb in or out of the tub one foot at a time, like an adult. VI RR 144, VII RR 63-64. She would have to sit on the edge of the tub to get in or out. B.W. also had scrapes on her thighs consistent with sliding over a metal railing to get in or out of the bathtub. VI RR 134-35. The bathtub had sliding glass doors with a metal frame surrounding the doors including on the tub itself. VII RR 49, XVI RR State Ex. 40. N.W., had been diagnosed as autistic and described as an 'instigator.' VI RR 35, VIII RR 100.

Amanda Walker testified that she did not believe that Shelley or Kenneth Walker burned B.W. as the State alleged. VI RR 14. The Walkers never raised their voice to the children. VI RR 36. Kenneth

Walker has had a heart attack, a stroke, a pacemaker and degenerative discs in his back. VI RR 162. Shelley Walker has back problems and arthritis. VI RR 163. For either of the Walkers to forcibly immerse B.W. in the tub would require more strength or physical exertion than they would be able to perform. If this were an immersion burn, B.W. would be expected to fight back, struggle, kick or try to get away from the water. VI RR 164; X RR 34. There was no evidence of that in this case.

A twenty-six year old CPS worker who had not had a heart attack, or stroke or other significant medical issues found it difficult to hold a 27 pound doll in the same manner in an in-court demonstration. VII I RR 104-105. A forty-one year old doctor did not find holding a similar weighted doll in the position necessary to be the easiest thing. X RR 36. The doctor had not had a heart attack, stroke or back problems. X RR 37.

One of the first Tyler Police Department officers to arrive at the house testified that the case appeared to be an issue of an accident and not enough supervision. VII RR 36-37.

A different patrol officer believed because there were no splash

marks, this was a forced immersion. VII RR 70-71. He also testified that he had no experience as to how hot water had to be to cause burns, and admitted to questioning by the State that everything he testified to regarding B.W. was speculation. VII RR 77. This officer also testified that when he arrived the tub was still full, and that if the tub had been drained he would have taken that as an indication of hiding evidence. VII RR 61-62. This despite his statement that he believed the Walker's as prudent parents should have drained the water. VII RR 61.

The State's primary expert witness on the issue of the injuries was Dr. Wolf, the Chief of Burn Services and Professor and Vice Chairman for Research in the Department of Surgery at the University of Texas Southwestern Medical Center. VI RR 87. The only way that these injuries would rise to the level of serious bodily injury, that is bodily injury which creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment os the function of any bodily member or organ would be if the burns were left untreated. VI RR 117. Only if the burns were left untreated could they rise to the level of serious bodily injury because of a risk of infection and ongoing systemic problems. VI RR 117. As long

13

as the burns were treated, it was "relatively straightforward." VI RR 117. . Almost immediately, the skin would be red, but the peeling or blistering consistent with a second degree burn would not develop for some time. VI RR 119. It was possible for B.W. to walk down the hall and seek assistance prior to the blisters developing. VI RR 120.

So during the final witness for the prosecution, the State was left with two possible conclusions from the evidence. One, that B.W. was in the water accidentally ands was walking around on her own; or two that she was submerged or immersed her and held in an elevated position. X RR 32-33, 72, 91.

Dr. Cox, the State's final witness described how a three year old child could be treated while in pain. At different points during the case, Dr. Cox was either concerned about the scrapes and scratches to B.W.'s legs, or not overly concerned. X RR 44-45. Dr. Cox also based his assessment that this was abuse on the fact that he had treated B.W.'s brother, T.W., for injuries years previously. X RR 47. This occurred before the Walker's adopted the children or were care-givers. X RR 47. He ordered a skeletal survey and found no sign of previous undiagnosed or untreated injuries. X RR 48-49. He found nothing in

the family history to suggest abuse either. X RR 49.

Dr. Cox assumed, and testified previously, that the water temperature was at least 135 degrees and was probably well over 135 degrees. X RR 50-51. He did not know the results of the temperature testing conducted by the Tyler police. X RR 52. His assessment was conducted, and he based his opinion only on information in the first two days following the burns, and was not reevaluated based on any other evidence. X RR 53.

Significantly, Cox also stated that there were no bruise marks or hand prints or grasp marks to indicate B.W. was restrained in the water. X RR 95.

The Walkers called Dr. Scott Lawrence, a former engineer and pilot in the Air Force and a physician since 2000. X RR 168. He was a graduate of the Air Force Academy, received a master's of science in engineering management, and his medical training at the University of Texas Medical Branch. X RR 168, 171. He currently works as an emergency room and family practice physician. X RR 168-170. Dr. Lawrence reviewed the police reports, the medical records, the pictures, the interviews in the case, and did not agree to testify for the Walkers

until he was well into the review process. X RR 173. Based on Dr. Lawrence's review of the evidence, the burns to B.W. were accidental in nature. X RR 174.

Like Dr. Cox, he considered the skeletal survey, all the photographs, the family history. X RR 176-77. However, he also had access to the actual location and bathtub where this occurred. X RR 176. He determined that the total slope in the bathtub was an inch and a half, and that with a child, her feet shoulder width apart, the difference in the burn marks of half an inch proved that she was trying to get out and blocked by the shower door. X RR 180-81. Dr. Lawrence provided the most thorough review and explanation of the evidence. X RR 180-188.

He also reviewed and analyzed the Walkers medical history and came to the conclusion that neither Kenneth or Shelley Walker individually or jointly were physically capable of holding B.W. suspended in the air for the time required to cause the burns. X RR 188-192, 193. Neither of the Walkers had any burns to their hands or arms, there was no evidence they were in the tub. X RR 192.

C. Analysis

In analyzing the facts, and in an effort to comply with this Court's guidance from <u>Brooks</u>, the appellate court stacked supposition upon supposition in order to support the verdict in the case. B.W. could not have been responsible for starting the water, despite evidence the children had done that before. One of the Walkers must have knocked the shower doors from the tracks, despite evidence about their age and medical condition. <u>Walker</u> at *20-21. One of the Walkers, with their medical conditions, must have held B.W. suspended in the tub of scalding water with a child presumably fighting against them to escape the water. Even the State's experts testified that it would be difficult for either of the Walkers to take these actions. <u>Walker</u> at *21. The court examined, and disregarded, evidence of splash marks which did not support the State's theory. <u>Walker</u> at *13.

The court resolved testimony regarding whether B.W. had the physical ability to turn the faucet on by herself in favor of the verdict (a detective opined she did not, while a treating physician noted that B.W. had climbed out of a hospital crib with railings). <u>Walker</u> at *14-15.

While there was testimony regarding the temperature of the

17

water in the tub of less than 130 degrees, (at *11), the lack of splash marks was an indicator of abuse because it showed that B.W. did not fight or struggle. Walker at *15. However the temperature tested could not raise to a temperature to cause splash marks. Id. A lack of sparing to B.W.'s feet meant she was moving around in the tub, and not being held to the bottom, despite Mr. Walker's heart attack, stroke and a pacemaker, carpal tunnel syndrome and wrist and shoulder surgery; or Mrs. Walker's hypertension, compression arthralgia hypertrophy and arthritis. Walker at 817, 20-21.

The State's theory that B.W. was held suspended in the scalding water disregards the scrapes and bruises present, and also disregards the lack of finger marks or bruising consistent with being held securely. Walker at 814, n. 7, and 819-20. The appellate court stated that neither of the State's experts considered: (1) the scratches on B.W.'s chest and leg; (2) the fact that the bathtub had a metal track surrounding the shower door; (3) the fact that the shower door was off the track; (4) the Walkers' physical capabilities. Walker at *34.

In an effort to uphold the verdict, the Court of Appeals, in accordance with a Jackson legal sufficiency analysis, ruled in every

18

aspect to support the State's theory. Simply regarding the State's evidence, the court found legally sufficient evidence despite: the testimony that both the CPS worker and doctor found it 'difficult' to demonstrate holding 26 pounds for the required amount of time; the fact that it appears the officers changed the setting on the water heater thermostat to produce the maximum temperature; the fact that Dr. Cox did not know of the temperature testing performed and testified the burns were consistent with a higher temperature (in excess of 135 degrees) than was possible; that Dr. Cox based his conclusion partially on abuse which had occurred years previously before the Walkers were involved in the lives of these children; that Dr. Cox disregarded the absence of injuries which would have indicated forcible restraint; that one of the first officers on scene determined this was an accident and not intentional; that another officer determined this was a forced immersion; that good parents would have drained the tub, but that if the tub had been drained he would have believed they were hiding evidence; that he had no knowledge of how hot water had to be to burn and admitted that his opinion was speculation.

Again based on a <u>Jackson</u> analysis, the court disregarded the

19

evidence offered by Dr. Lawrence's opinion that the burns were accidental. Dr. Lawrence was the only expert to have access to the scene as well as the complete medical history and offense reports. He was the only witness able to identify and explain the discrepancy in burn marks and the scrapes indicating an effort to leave the tub by the child. He also was the only witness to review the Walkers medical history and concluded that neither were individually or jointly capable of holding B.W. suspended for the time required to cause these burns.

Respectfully, these two cases establish the need not just for a legal sufficiency review by the appellate courts, but a factual sufficiency review. These cases demonstrate that while there may be legally sufficient evidence, the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

## D. Speculative Verdict Allowed to Stand

By only analyzing the case under a <u>Jackson</u> analysis, the court improperly allowed the verdicts in this case to be supported, inference upon inference. While the reviewing court is to give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony,

to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, specifically in this case, the reviewing court viewed every fact and inference to uphold the verdict. <u>Jackson</u>, 4443 U.S. at 318-19.

While juries are allowed to draw multiple inferences as long as each inference is supported by the evidence, that did not occur here. <u>Hooper v. State</u>, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. <u>Id.</u> A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. <u>Id</u>. While it is difficult to recognize the difference between an inference and speculation, it is not impossible and is a fact driven analysis.

While this court expressed its disapproval of the term inference stacking as adding unnecessary confusion, it has clearly disapproved a speculative verdict and relied on the courts using a <u>Jackson</u> analysis to determine if it was speculative. <u>Hooper</u> 214 S.W.3d at 18. As in these cases, the appellate courts will draw these successive inferences even

when there are serious questions as to the credibility of witnesses or whether those inferences are even valid.

A reviewing court should determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As in this case, appellate courts can stack inferences even when that type of analysis is not permitted. Garcia v. State, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

The difference in analysis is profound. By looking at the evidence to support the verdict, courts apply one rational. Without a factual sufficiency review, they are, as here, free to disregard reasonable conclusions from the credible evidence and allow a speculative verdict to stand. Without another discussion of the facts from this case, the jury's verdict is only based upon speculation, and possibly emotion, and is not reasonable when examined cumulatively. These verdicts are manifestly unjust and should be reversed.

## CONCLUSION

Under all circumstances, the Court of Appeals erred in affirming the trial court's decision. This Court should either reverse the lower court and remand to the trial court for a new trial by reinstating a factual sufficiency review, or reverse the judgment of the trial court having found that the verdict is based on speculation, not reasonable conclusions and inferences from credible evidence.

## PRAYER

WHEREFORE, Petitioner prays the Court to reverse the judgment of the Court of Appeals; and for such other and further relief to which he may show himself justly entitled.

Respectfully submitted,

/s/ James Huggler
James W. Huggler
State Bar No. 00795437
100 E. Ferguson, Suite 805
Tyler, Texas 75702
Telephone:  903-593-2400
Facsimile:  903-593-3830
ATTORNEY FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition has been forwarded to the District Attorney, Smith County, Texas, and on the State Prosecuting Attorney by regular mail or through the State of Texas Electronic Filing System on this the 1st day of December, 2015 at the addresses listed below

/s/ James Huggler
James W. Huggler

Mike West
Smith County District Attorney's Office
100 N. Broadway, 4th Floor
Tyler, Texas 75702

Lisa McMinn
State Prosecuting Attorney
PO Box 12405
Austin, Texas 78711

<u>CERTIFICATE OF COMPLIANCE</u>

I certify that this Brief complies with Tex. R. App. P. 9.4, specifically using 14 point Century font and contains 5,060 words as counted by Corel WordPerfect version x6.

 <u>/s/ James Huggler</u>
James W. Huggler, Jr.